25 C.C.P.A. (Patents)

## DIRKES et al. v. EITZEN.

### SAME v. DECKER.

Patent Appeals Nos. 3947, 3948.

Court of Customs and Patent Appeals.

May 31, 1938.

Eugene C. Brown, of Washington, D. C., and Marvin J. Reynolds and Newman F. Presson, both of New York City, for appellants.

Gustav Drews, of New York City (Hans v. Briesen, of New York City, of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

These are appeals from decisions of the Board of Appeals of the United States Patent Office, in two interference proceedings, which awarded priority to the senior parties Eitzen and Decker, respectively.

In appeal No. 3947, the interference arises between an application of appellee, Eitzen, serial No. 338,065, filed April 17, 1934, which is a renewal of his application filed February 7, 1929, and a patent, No. 1,968,818, issued to appellants August 7, 1934, upon an application filed August 1, 1931. The interference was declared as of January 7, 1935. One count is involved, which corresponds to a claim in the patent of appellants, and was copied by appellee.

In appeal No. 3948, the interference is between the application, serial No. 253,302, of appellee Decker, filed February 10, 1928, and the aforesaid patent of appellants. The interference was declared as of January 7, 1935. One count is involved. It corresponds to a claim of appellants' patent and was copied by appellee.

In both cases, after the declarations of interference, the cases were submitted upon the preliminary statements of the parties. Within the motion period, a motion to dissolve was made by appellants in each of the interferences. The same ground for dissolution was set up by appellants in each of said motions, which ground was that neither of the appellees had a right to make the count of the interference in which his application was involved.

Each of said motions was granted by a Primary Examiner.

Upon appeal, the Board of Appeals, holding that each appellee could make the count, reversed the decisions of the Primary Examiners, and the Examiner of Interferences awarded priority to appellees Eitzen and Decker, respectively, on the record, which awards were affirmed by the Board of Appeals. No testimony was taken by either party.

The sole question for decision in each of these appeals is whether the appellee is entitled to make a claim corresponding to the count. The two appeals are before us in a consolidated record, and will be decided in a single opinion.

Appeal No. 3947—Interference No. 69,776.

The count in this appeal is as follows: "In combination, a telegraph printing apparatus adapted to eject tape therefrom, a support, a tape puller for moving said tape across the support, tape engaging means operable to grip the tape to arrest its motion when there is a predetermined amount of tape between the printing apparatus and support, and electro-magnetic means for releasing the tape after a predetermined length thereof, corresponding to a plural number of characters, has been ejected by the printing apparatus."

The subject matter of the interference relates generally to a telegraph printing and projecting system in which information, printed on a tape that issues from the usual stock market ticker, is enlarged and projected by means of a lamp and a system of lenses on a screen.

The parts of such a device consist of a ticker, projection apparatus, means for advancing the tape through the projector, and the screen. Stock market and news projecting machines are not new, and the novelty in the art is contained in one part of the count which provides for a gripping means which arrests the motion of the tape when there is a predetermined amount of it between the ticker and the support, and in another part of the count which calls for an electro-magnetic means for releasing the tape after a predetermined length of it corresponding to a plural number of characters has been ejected by the ticker. Both parties seek to avoid the appearance of jerky images on the screen.

Appellee's apparatus, as shown in his application, goes into operation when the loop of tape which has been ejected from the ticker is sufficiently long to exert enough pressure against a spring-held lever to depress it against a terminal. The lever and terminal are situated between the ticker and the intake side of the projector. Close to this side of the projector is a tape gripper which is operated by a solenoid and spring. The contact of the terminal and lever, established through pressure of tape as aforesaid, closes an electric circuit through another

solenoid placed over a constantly revolving disk on the motor shaft near the rewind reel on the opposite side of the projector. When the circuit through this second solenoid is closed, a latch member held by it is immediately freed and a throw-out lever, held by the latch, and a toggle are pulled back by a spring. As the toggle is sprung, a brake shoe which is attached to the lower end of the lever engages the rotating disk below it and locks a rotatable sleeve member, into which the brake shoe fits, to the rotating disk for a complete revolution, when the throw-out lever again engages the latch. Rotation of the sleeve member carries with it a like rotation of a crank pin to which is attached a pitman or rod connected on its other end with a reciprocating gripper which pulls the tape in each stroke a distance of two and one-half inches in approximately one-half a revolution of the sleeve.

As soon as the sleeve member begins to rotate the electric contacts are such that the gripper holding the tape between the ticker and the projector is released through the first solenoid, and the tape forming the loop is drawn through the projector two and one-half inches. Thus it appears that tape movement through the projector is controlled initially through the presence, over the lever and contact, of sufficient tape to close said contact, whereupon the second solenoid is energized to permit the drawing of tape through the projector as aforesaid.

Appellants contend that in the operation of appellee's device the amount of tape between the ticker and the projector is not a predetermined quantity, for the alleged reason that during the pulling motion of the tape the ticker may or may not be supplying additional tape to the loop. We cannot agree with this reasoning, as it appears to be quite clear that the system cannot start to operate until a sufficient amount of the tape rests on the spring lever to bring it down to the contact, and if there should be a less amount of tape the circuit cannot be closed.

The movement of the tape puller is much more rapid than that of the ticker, but there must be a certain quantity of the tape ejected before the tape puller can operate.

In this respect the Board of Appeals, in its decision overruling that of the Primary Examiner which granted appellants' aforesaid motion to dissolve, stated as follows: "It seems to us therefore that Eitzen's apparatus would operate to produce a movement of the tape between maximum and minimum size of loop. The revolution of sleeve member 65 is obviously very quick, probably instantaneous and the amount of tape which might be received from the ticker at that time would be substantially negligible. Eitzen emphasizes this on pages 12 and 13. Since the interval is so short the variation in the amount of tape fed by the ticker during successive movements would be negligible and consequently constant. This feature of Eitzen is regarded as satisfying the first reference to predetermined amount in line 5 of the count."

We think that the board properly described this operation of the device of appellee.

Continuing in its decision on the point of a predetermined minimum amount of tape in the loop, the board said that— "The next clause requires tape engaging means operable to grip the tape to arrest its motion when there is a predetermined amount of tape between the printing apparatus and the support. In the Dirkes apparatus this is the snubber 28 and the clause evidently means when there is a predetermined minimum amount of tape in this condition, that is, when the loop or festoon is at its minimum allowable size or when the tape approaches a straight line. This is true of Eitzen's snubber 26 which engages the tape at the end of each advancing stroke and we think that it would always happen when there would be a predetermined amount of tape between the printing apparatus and the support by reason of the fact that Eitzen's tape puller operates substantially instantaneously and would always bring the tape loop up to such same minimum size."

We agree with the board in this reasoning. It will be observed from an examination of the count and of the apparatus of appellee hereinbefore described that there is an electro-magnetic means for releasing the tape.

We must now decide whether the said tape-releasing means operates "after a predetermined length thereof, corresponding to a plural number of characters, has been ejected by the printing apparatus."

One of the figures of the application of appellee is a drawing of the two and one-half inches of tape that is pulled each time the gripper is released. On tape of this length so released it goes without saying that in the operation of appellee's device there would appear several or a plurality of numerals and letters which are meant by use of the word "characters." The tape, as has been hereinbefore described, is always drawn for a distance of two and one-half inches. Since the tape cannot be released until there is sufficient amount of it in the loop to close the circuit, and since each time it is released the puller draws it for the said distance, it seems quite clear to us that there would always be a predetermined maximum size loop, particularly in view of the fact that the tape-drawing device is operated at a much higher speed than that of the ticker.

Appellants urge that the count should be limited in accordance with the disclosure of the patent, and when so limited appellees cannot make the count. This might be true if the count were ambiguous. There is no ambiguity in the wording of the count. The expression "plurality of characters" contained in the count should be given its usual ordinary meaning.

The rule on this question is found in the case of Sweetland v. Cole, 53 F.2d 709, 19 C.C.P.A., Patents, 751, wherein the court said (page 711) that—

"It is the rule that in interference cases between a patent and an application, where the counts are ambiguous, they are to be construed in conformity with the patent in which they originated. This question was discussed by this court in Field v. Stow, 49 F.2d 840, 18 C.C.P.A. (Patents) 1437, 1440. It is also the rule that expressly defined limitations may not be disregarded (In re Bijur, 40 F.2d 999, 17 C.C.P.A. (Patents) 1134; Thompson v. Pettis, 44 F.2d 420, 18 C.C.P.A. (Patents) 755), but, in applying these rules to the issues of a given case, the meaning of the limitations must be determined by the normal meaning of the words in which such limitations are expressed, as those words are used in connection with the art involved. If, in the respective disclosures, the means are present to meet the count under the normal meaning of its limitations as so determined, then we know of no authority for the court entering upon a technical research into the respective methods of operation and saying that one device will operate and the other will not, or that one will operate differently from the other."

It is our opinion that the disclosure of appellee reads on the count. Therefore, the decision of the Board of Appeals will be affirmed.

Appeal No. 3948—Interference No. 69,956.

■ The count in this appeal reads as follows: "In combination, a source of tape, a tape support, a tape puller, means for operating said tape puller at one speed when a predetermined amount of tape forms between the source and support, and means for operating said tape puller at an appreciably lower speed when the tape between the source and support decreases to a predetermined amount, means to arrest the movement of the tape when the tape between the source and support decreases to a still smaller amount and means for maintaining said tape at rest until an appreciable amount thereof corresponding to a plurality of characters again accumulates between the source and support."

The invention at issue relates to a projecting machine operating generally as outlined in appeal No. 3947.

The Primary Examiner, in his decision granting the motion of appellants to dissolve on the ground that appellee had no right to make the count in issue, stated, omitting reference to figures and numbers, as follows: "Decker discloses in his modified form a source of tape, a tape support, a tape puller, means for operating said tape puller at one speed when one amount of tape forms between the source and support, * * * and means for operating said tape puller at an appreciably lower speed when the tape loop decreases, * * * means to arrest the movement of the tape when the tape loop decreases to a still smaller amount * * * and means for maintaining said tape at rest until an amount again accumulates between the source and support. * * *"

Comparing this statement with the count, it will be observed that the Primary Examiner conceded that the structure in appellee's application meets the count in every particular except that of predetermined amounts of tape and also an ap-

preciable amount thereof corresponding to a plurality of characters.

The said decision was based principally upon construction of the expressions "a plurality of characters" and "appreciable amount." While the Primary Examiner stated that the structure of appellant disclosed "means to arrest the movement of the tape," he held that "Neither does the word 'arrest' read well on Decker. Dirkes and Roberts grip the tape to stop it and hold it until an appreciable amount accumulates. Decker has no particular means for maintaining the tape at rest. His motor merely stands idle."

Undoubtedly the structures shown by the parties are quite different in several respects. It is not necessary, however, to describe them as the issue is confined, as stated by appellants in the résumé of their brief, to the sole question of whether the disclosure of appellee supports the following feature of the count: " * * * means for maintaining said tape at rest until an appreciable amount thereof corresponding to a plurality of characters again accumulates between the source and support."

The movement of the tape is ended in the device of appellee when the motor is stopped. The said stopping of the motor is accomplished by the gradual pressure of a brake shoe on the flywheel. It is quite clear that the means by which the motor is stopped is the means which arrests the movement of the tape. It seems to us to be equally clear that when the motor is stopped as aforesaid, and the tape is motionless, the means which stops the motor arrests the movement of the tape and prevents it from moving until the device is again put into operation by reason of the slack between the ticker and the projector, and thus constitutes "means for maintaining said tape at rest" as set forth in the count. When the ticker again starts printing and ejecting the tape the brake shoe by suitable means gradually releases its pressure from the flywheel permitting the motor to start and pick up speed. It appears to us that before the motor starts there must be slack in the tape, otherwise the mechanism cannot be put in operation. It is an arm of the device which is in constant contact with the tape, the downward motion of which releases the brake shoe. The arm cannot descend until there is slack or a loop in the tape. There can be no slack or loop of tape until the ticker has done some printing on the tape.

The expression "appreciable amount" is stated in the count to be a length of tape upon which there is printed "a plurality of characters."

The Primary Examiner stated that a plurality of characters means a reasonable plurality. It will be seen that the count is broad. It contains no limitation as to a minimum number of characters to constitute a plurality. The count is not ambiguous and the words "plurality of characters" contained in the count should be given their usual ordinary meaning. Sweetland v. Cole, 53 F.2d 709, 19 C.C. P.A., Patents, 751. Accordingly it does not matter whether the slack length of tape corresponds to the space upon which two characters or more than two are printed, as long as there is more than one character. The Primary Examiner did not say that the device of appellee's application cannot print more than one character. It is true he did state that "it is possible that Decker's tape may move one quarter inch sufficient to print two characters," but his reasoning on this phase of the motion to dissolve was predicated entirely upon the premise that the count meant more than two characters. In view of this reasoning of the Primary Examiner, we think the board did not err, as contended by appellants, in stating "The Examiner has conceded that he thinks two characters would be provided for."

It is our opinion that the disclosure of appellee supports the count. Hence the decision of the Board of Appeals will be affirmed.

For the reasons herein stated, the decision of the Board of Appeals in each of the appeals before us, numbered 3947 and 3948, is affirmed.

Affirmed.